Christine Anderson Ferraris, #031414
**A. FERRARIS LAW, P.L.L.C.**
333 N. Wilmot, Suite 340
Tucson, AZ 85711
Tel.:(520) 618-5339
cferraris@aferrarislaw.com

Susan M. Rotkis, AZ Bar 032866
**PRICE LAW GROUP, APC**
382 S. Convent Ave
Tucson, Arizona 85701
Tel. (520) 622-2481
Susan@pricelawgroup.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Barrio and Kali Barrio, Husband and Wife, | Case No.: _____ |
| Plaintiffs, | |
| v. | **CIVIL COMPLAINT** |
| Gisa Investments, LLC, an Arizona limited liability company; Tophat U.S., LLC, an Arizona limited liability company, | **MAGNUSON MOSS WARRANTY ACT, FRAUD, BREACH OF CONTRACT, RACKETEERING, AIDING & ABETTING, NEGLIGENT MISREPRESENTATION, RESCISSION, CONSUMER FRAUD, BREACH OF WARRANTY,** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     The Plaintiffs, Gabriel Barrio and Kali Barrio, through A. Ferraris Law, and Price Law Group, the undersigned counsel, file this Complaint to sue Defendants Gisa Investments, LLC, and Tophat U.S., LLC for repairs and defects

associated with a Land Rover Defender 110 purchased from Gisa Investments, LLC, and the custom restoration agreement with Tophat U.S., LLC. Gisa Investments, LLC and Tophat U.S., LLC, acted as one another's representative and agent and by their conduct caused Mr. and Mrs. Barrio to suffer and continue to this day to suffer economic and non-economic harm in violation of federal and Arizona state law.

## PARTIES, JURISDICTION & VENUE

2.    Plaintiffs, consumers Gabriel Barrio and Kali Barrio, (the "Barrios") are residents Othello, Adams County, Washington.

3.    Defendant, Gisa Investments, LLC ("Gisa") is an Arizona limited liability company registered with the State of Arizona, through Tophat U.S., LLC, is in the business of importing, re-building, selling and repairing used Land Rover Defenders in Phoenix, Arizona.

4.    Defendant Tophat U.S., LLC ("Tophat") is an Arizona domestic limited liability company registered with the State of Arizona, and together with Gisa Investments, LLC is in the business of importing, re-building, selling, and repairing used Land Rover Defenders in Phoenix, Arizona.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1367 and 15 U.S.C. § 2310(d)(3)(B).

6.    Venue is proper in the District of Arizona pursuant to 28 U.S.C. §1391 (b)(2), because the unlawful conduct alleged occurred within the District of Arizona.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

7.     On or about March 23, 2016, while searching on the internet for Mr. Barrio's dream vehicle, Tophat's internet advertising caught Mr. and Mrs. Barrio's attention. Tophat advertised they rebuild "like new" Land Rover Defenders. Tophat representations of quality and expertise convinced the Barrios to enter into an agreement and they paid $36,000 (April 8, 2016) toward the $120,000 purchase price for a custom rebuilt Land Rover Defender.

8.     Under the Tophat written agreement, the following representations were made:

a.     (The Land Rover Defender) "**shall be constructed in a first class fashion** as is standard for Tophat, using "**highest-grade materials"**

b.     Tophat, **warrants** it has had sufficient time to fully and completely review the plans and specifications (for the custom build). The total sum of $120,000.00 USD shall be paid to Tophat U.S., LLC, $36,000 within 7 days of execution of agreement, second installment, $36,0000, is due halfway through the process, and remaining $48,000 upon delivery of the vehicle. Any changes or alterations in the plans or specifications shall be by written change order executed by both parties. In the event of any change order, the contract price shall be adjusted accordingly. The Land Rover Defender 110 shall be completed within 12 months after CONTRACTOR has received the 30% deposit. CONTRACTOR shall be entitled to an extension of time to complete the vessel in

3

the event of the following events: (a) Failure of delivery of necessary components from third parties, provided that due diligence has been exercised by the CONTRACTOR in the ordering of the materials; (b) Force majeure or act of God.

c.   CONTRACTOR shall provide to BUYER any warranties or guarantees which may be available for materials incorporated in the car plus a one-year, unlimited mileage warranty on the engine and transmission.

d.   BUYER and BUYER'S representative shall be entitled to inspect the work in progress at any reasonable time.

e.   CONTRACTOR will provide pictures of the full course of the build and purchase of products used in the build on a Bi-weekly basis.

f.   CONTRACTOR guarantees that this vehicle can be imported and registered in the state of Washington. If not, we will take back the vehicle and give a 100% refund on the purchase of the vehicle ($120,000,00).

9.   The following details the documented history of repairs and problems experienced since the date of delivery and supports that pre-sale advertising and written agreement misrepresent Tophat's quality of workmanship and expertise in building the Land Rover Defender the Barrios purchased.

10.   Since the date of delivery, approximately June 22, 2018, the Defender's disrepair is well documented by several repair facilities. Significantly, findings documented show that Tophat together with Gisa by their advertisements and written communications, and related conduct made unlawful material misrepresentations in connection with the sale of the Land Rover

Defender to the Barrios.    **"The Land Rover Defender) "shall be constructed in a first-class fashion as is standard for Tophat, using "highest-grade materials"**

11.    The Tophat Agreement reiterates the advertising Tophat employed to induce the Barrios to purchase the Defender.  The promise of the "highest-grade materials, and that the Defender would be "like new" was false, though Tophat promised a like-new Defender and first-class construction. Within a day or so after delivery in Tempe, the Defender's air conditioning unit failed. A faulty air conditioning unit is a major safety issue in Arizona where temperatures average more than 100° at the time of delivery (late June 2018) when the Defender was delivered to the Barrios at Tophat's facility in Tempe.[1]

12.    Purchase documents include a title for the Defender, Arizona Department of Transportation issues title given to the Barrios identifies Gisa Investments, LLC, as the owner of the Defender, with an issue date of January 2, 2018.

13.    Repair orders from shortly after delivery show that the transmission was seeping fluid. These initial events were followed by a dashboard fire with acrid smoke emanating from the wiring crammed into the dashboard.

_____

[1] According to recorded temperatures from that period daytime average temperature was between 102-106
https://www.timeanddate.com/weather/usa/phoenix/historic?month=6&year=2018

During an inspection of this major repair, the Barrios were informed the Defender's wiring exhibited poor workmanship, they were advised to have the wiring completely redone. Photos taken during inspections confirm the poor electronic workmanship and problematic materials and parts such as leakage throughout the transmission and pinion gears.

14.    The defective conditions found by third-party repair facilities demonstrates the Defender was not constructed in the "a first-class fashion" advertised and promised by Tophat. Unfortunately, these serious issues were only the beginning of months of inspections and diagnosis of serious mechanical problems with the Defender.  As the Defender continued to experience mechanical problems documents evidencing the problems were shared with Tophat. Emails between Mr. Barrio and Carel Van Helsdingen show that several days passed before Mr. Helsdingen responded, and was essentially dismissive of the leakage problems and while admitting that a Tophat technician was responsible for the Defender's poor wiring. Though Tophat technician, Alex, did attempt to repair Defender's mechanical problems the Defender continued to experience electronic failures of several components along with engine overheating, and failure of the heater (all occurring in the middle of winter in Washington state). Tophat eventually did reimburse for some repairs, but only those that Tophat unilaterally decided were under warranty, though having provided the following warranty to the Barrios:

"...provide to BUYER any warranties or guarantees which may be

available for materials incorporated in the car plus a one-year, unlimited mileage warranty on the engine and transmission."

15.    A major problem for the Barrios was that parts installed by Defendants that required replacement were not marked as parts normally would be so that they could be ordered.  This surprise was discovered when repair technicians engaged by the Barrios contacted Tophat, and Alex (Tophat's technician) admitted Tophat had no information about the parts Tophat installed, thereby no parts, nor accompanying warranties were available.

16.    Defendants never disclosed that parts installed were un-marked and had no warranty, instead they advertised parts and materials were of high grade and the Defender was warrantied.

17.    Not only did the Barrios incur significant loss to repair the Defender, but due to the difficulty in finding parts, combined with the significant challenges and time required to diagnose repairs needed, they endured several months they were unable to use the vehicle for it was unsafe and inoperable.

18.    The Barrios were not compensated for their loss of use nor did the limited reimbursement Tophat provided account for the significant safety risks Tophat subjected the Barrios and the public sharing the road, by selling them a Defender with poor workmanship and mechanical failures.

19.    The Defender's mechanical failures continued through October 2019 resulting in significant time and expense. The following provides some detail but is not inclusive of all the problems:

      a.     Replace leaking radiator though paid for by Tophat there were several weeks of loss of use waiting for a replacement to be shipped to the Land Rover repair facility, Dare Brittania (224 miles from the Barrios' home);

      b.     Significant time to diagnose and expense to repair an ill fitted serpentine belt that affected several operations in the Defender causing multiple mechanical problems;

      c.     Diagnosis of Heater/AC which malfunctioned since delivery of the vehicle in Arizona (Agreement shows $7,500 charge for the air condition unit);

      d.     Installation missing door sealant;

      e.     Repair malfunctioning of key/door lock;

      f.     Repair leaking transfer case;

      g.     Repair leaking washer reservoir, and malfunctioning windshield washer, spray;

      h.     Repair rear door with broken latch;

      i.     All wiring installed was unmarked as well as all fuses and relays making any inspection or repair nearly impossible because of the time involved to determine connections or faults.

20.     To date, the Defender has spent most of the time since delivery in June 2018 at repair facilities to diagnose and repair the poor workmanship and low quality or faulty parts Tophat installed in the Defender.

21.     Contrary to Tophat's representations the Defender was sold as an

unsafe and uninsurable vehicle. Haggerty Classic Car Insurance, whose brochure Tophat provided with the sale, informed the Barrios the Defender could not be insured for daily driving, the very purpose for which Mr. Barrio informed Tophat he intended to use the Defender.

22.     As described and documented, the repair and safety problems Mr. and Mrs. Barrio experienced with the Defender are in stark contrast to additional written representations of the Defender's condition made shortly before delivery:

> **"...the car is ready and perfect. Everything has been tested and good to go."**

> "**Everything works properly and we're currently doing the final test runs**."

23.     Tophat further breached its Agreement when it failed to have Defender delivered in a year, a promise made again several months after signing the Agreement in October (2016) when the Defender body had been purchased, where Mr. Van Helsdingen reassured the Barrios: "**Your project is still on schedule though and an April (2017) delivery should not be a problem at all.**" Email dated 10.01.16 from Mr. Van Helsdingen to Mr. Barrio. This false promise again repeated by Mr. Van Helsdingen a month before expected delivery, "We have planned a shipment for your car next month so we're nearly there!" was combined with a statement promising the Defender was completed per contract, though it was not. Based on Mr. Van Helsdingen's false promises, the Barrios sent a payment of $36,000 however it would be more than three months before Tophat delivered the Defender to the Barrios in late June 2018.

24.     November 2017, Mr. Van Helsdingen before delivery, requested the Barrios pay in advance $24,000.

25.     Written communications from Mr. Van Helsdingen represented the build process would be sped up if Tophat received these funds earlier than the contract required. The request for fees in advance combined with demonstrated delays and false promises indicates Tophat was undercapitalized without sufficient funds to meet contractual obligations.

26.     Mr. and Mrs. Barrio have incurred significant harm and loss due to Gisa and Tophat's misconduct in the advertisement, sale, repair and warranty of the Defender.  Mr. and Mrs. Barrio's out-of-pocket costs for repairs are about $26,723.89. They have incurred further out-of-pocket loss by multiple long-distance trips to repair facilities, interest for loans to purchase and repair the Defender, interrupted travel, major loss of use of the vehicle, loss of income, stress, humiliation, and frustration.

27.     Mr. and Mrs. Barrio have attempted to resolve this matter before filing this action.  They offered to release all claims and resolve this matter if Tophat U.S., LLC and Gisa Investments LLC would agree to undo the transaction, that is cancel the contract, return all amounts paid thereunder, and reimburse Mr. and Mrs. Barrio for out of pocket costs and loss in the amount of $171,054.28, and to take delivery of the Defender from the Barrios' home in Washington State.

28.     To date neither Defendant has provided a written response to the written settlement offer.

## ARIZONA CONSUMER FRAUD ACT
## A.R.S. § 44-1522 to A.R.S. § 44-1534

29.    Plaintiffs incorporate the foregoing facts by reference as if fully set out herein.

30.    Plaintiffs pursue a claim for violation of the Arizona Consumer Fraud Act against Defendants.

31.    The Arizona Consumer Fraud Act protects consumers against unfair and deceptive conduct.

> "The term 'deceptive' has been interpreted to include representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible."

*Ward v. Fireman's Fund Ins. Companies*, 731 P.2d 106, 112, 152 Ariz. 211, 217 (Ariz. App. 1986).

32.    Elements to pursue a lawsuit for violation of the Consumer Fraud Act ("Act") are a false promise or a misrepresentation made in connection with the sale or advertisement of merchandise and the consumer's consequent and proximate injury. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974).

33.    Misrepresentation, as defined under the Act, may be verbal or written to support a violation of the Consumer Fraud Act. A.R.S. § 44-1521 (7) defines "Sale", § 44-1521 (5) defines "Merchandise," and A.R.S. § 44-1521 (1) defines "Advertisement." Each term comes with a broad definition therefore typical usage does not control each term's interpretation under the Act. *Murray*

1   *v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 68 ¶ ¶34-43, 366 P.3d 117, 127-129 (Ct.

2   App. 2016).   The Court of Appeals in *Villegas,* considered the Act's definitions of

3   "sale," "advertisement," and "merchandise" relative to Defendant Transamerica

4   Financial Services loan agreement and its advertising, and found that a loan,

5   though not typically considered merchandise, was merchandise under the Act's

6   broad language, and as such, the loan transaction was a sale and advertisement of

7   merchandise under the Act."

8       34.    Tophat's misrepresentations as evidenced by third-party

9   inspections and documented facts in connection with the advertising and sale of

10  the Defender is actionable conduct under the Arizona Consumer Fraud Act.

11      35.    Further, Tophat's knowledge and apparent business practice of

12  advertising and misrepresentation typifies willful deceit, and reckless indifference

13  to Mr. and Mrs. Barrio's respective interests, such conduct is subject to punitive

14  damages. Punitive damages are to be awarded to punish the wrongdoer and deter

15  such misconduct in the future. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz.

16  326 (1986). Punitive damages are appropriate where a defendant's wrongful

17  conduct was guided by willful or wanton disregard of the interests of others. *Piper*

18  *v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 180, 883 P.2d 407, 41 (App. 1993). An act

19  is willful where the resulting injury is intentional or the natural or probable

20  consequence of the act. *Conchin v. El Paso & S.W.R. Co.,* 13 Ariz. 259, 264, 108 P.

21  260, 262 (Ariz. Terr. 1910). Courts have justified awarding punitive damages to

22  help consumers enforce consumer protections by helping to reimburse the cost of

1    litigation. *Linthicum* at 330.

2       36.    Gisa Investment LLC sold and transferred the Defender title to the

3 Plaintiffs concealing known information about the Defender's defects, and

4 Tophat's misrepresentations and deception. Under the Arizona Consumer Fraud

5 Act, Plaintiffs are entitled to recover from each Defendant actual damages and

6 punitive damages.

7                              **FRAUD**

8       37.    Plaintiffs incorporate by reference the foregoing paragraphs as if

9 fully set out herein.

10       38.    Plaintiffs pursue a claim for Fraud against Defendants.

11       39.    A claim for fraud is to remedy against deceptive conduct:

12        "The term 'deceptive' has been interpreted to include
representations that have a 'tendency and capacity' to convey

13        misleading impressions to consumers even though
interpretations that would not be misleading also are possible."

14

15 *Ward v. Fireman's Fund Ins. Companies*, 731 P.2d 106, 112, 152 Ariz. 211, 217
(Ariz. App. 1986).

16       40.    To pursue a legal claim for fraud one must show a representation

17 was made verbally or in writing; the representation was false, the representation

18 was important, the representor knew the representation was false or was ignorant

19 as to the truth; the representor's intent that the misrepresentation be acted upon

20 by the recipient in the manner reasonably contemplated; and the recipient's

21 reliance on its truth; the recipient's right to rely on the representation; and the

22 recipient's consequent and proximate injury. *Echols v. Beauty Built Homes, Inc.*,

132 Ariz. 498,500 (1982)

41.     Tophat's willful misrepresentations as evidenced by third-party inspections and documented facts in connection with the advertising and sale of the Defender is actionable conduct under a claim for fraud. Further, Tophat's knowledge and apparent business practice of advertising and misrepresentation typifies willful deceit, and reckless indifference to Mr. and Mrs. Barrio's respective interests, such conduct is subject to punitive damages. Punitive damages are to be awarded to punish the wrongdoer and deter such misconduct in the future. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326 (1986). Punitive damages are appropriate where a defendant's wrongful conduct was guided by willful or wanton disregard of the interests of others. *Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 180, 883 P.2d 407, 41 (App. 1993). An act is willful where the resulting injury is intentional or the natural or probable consequence of the act. *Conchin v. El Paso & S.W.R. Co.,* 13 Ariz. 259, 264, 108 P. 260, 262 (Ariz. Terr. 1910). Courts have justified awarding punitive damages to help consumers enforce consumer protections by helping to reimburse the cost of litigation. *Linthicum* at 330.

42.     Gisa Investment LLC knowingly sold and transferred the Defender title to the Plaintiffs concealing known information about the Defender's defects, and Tophat's misrepresentations and deception.

43.     Under a claim of fraud, Plaintiffs are entitled to recover from each Defendant actual damages, punitive damages, and attorneys' fees and costs. *Rawlings v. Apodaca,* 151 Ariz. 149 (1986).

## BREACH OF IMPLIED WARRANTIES
### A.R.S. §§ 44-1267, 47-2315

44.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set out herein.

45.    The Uniform Commercial Code as adopted by the State of Arizona provides for an implied warranty of merchantability for the sale of used motor vehicles pursuant to A.R.S. § 44-1267.

46.    Under A.R.S. § 44-1267, a motor vehicle must function in a safe condition as provided in title 28, chapter 3, article 16 and be substantially free of any defect that significantly limits the use of the motor vehicle for the ordinary purpose of transportation on any public highway.

47.    As described above, the Defender within one day of purchase did not function as required under A.R.S. § 44-1267.

48.    By A.R.S. § 47-2315, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified as required under A.R.S. 47-2316 an implied warranty that the goods shall be fit for such purpose.

49.    Here, Defendants failed to select and install suitable parts in the Defender, and did not properly exclude or modify such implied warranty, thereby Defendants failed to furnish suitable good to the Plaintiffs.

50.    Failure to honor the implied warranties that attached to the

Defender's sale, combined with the affirmations of facts and promises relative to the warranties became part of the basis of the Agreement.

51.     Defendants representations such as those described create additional express warranties that the Defender shall conform to the affirmation, promise and representation made, such as that it was a like new vehicle to be driven on public highways.

52.     As described, the Defender did not conform to express and implied warranties of merchantability, and fitness for a particular purpose.

53.     As a result of Defendants' violation of Arizona implied warranty law as described above Plaintiffs were harmed in an amount not less than $50,000.

54.     Because of Defendants' violations of implied warranty statutes, Plaintiffs are entitled to recover from each Defendant actual damages, punitive damages, and attorneys' fees and costs.

## MAGNUSON-MOSS WARRANTY ACT
## FEDERAL CONSUMER PRODUCT WARRANTIES ACT
## 15 U.S.C. §§ 2301-2312

55.     The Magnuson-Moss Warranty Act, Federal Consumer Product Warranties Act, 15 U.S.C. § 2301, et seq., ("MMWA") provides additional protections to consumers given under state warranty statutes.

56.     The MMWA, a federal statute that supplements actions and remedies for enforcing state warranty laws, also provides that a consumer can seek to recover reasonable attorneys' fees and costs, where a consumer proves that a deceptive warranty was made or where any person fails to comply with the Act's

1  provisions.

2      57.    Breach of Arizona warranty law (common law and statutes), in turn,

3  violates the MMWA, allowing the Plaintiffs to recover losses due to violation of

4  product and express written warranties MMWA pursuant to 15 U.S.C. § 2310(d)(1)

5  and 15 U.S.C. § 2310(d)(2) of the MMWA.

6      58.    As a result of Defendants' violation of Arizona implied warranty

7  laws as described above Plaintiffs were harmed in an amount not less than

8  $50,000.

9      59.    Additionally, under the MMWA for Defendants' violations of

10 Arizona implied warranty law the Plaintiffs are entitled to recover actual damages,

11 and attorneys' fees and costs, as well as injunctive relief.

12     60.    Defendants have breached the contract and warranty and further

13 violated the Federal MMWA by failing and refusing to bring the automobile into

14 conformity with its written and implied warranty.

15     61.    Defendants have also violated the MMWA by failure to provide in

16 its direct dispute response communications information establishing and

17 governing the informal dispute resolution mechanism, 16 CFR 703.2.

18     62.    Defendants have also violated the MMWA by their failure to make

19 available to the Plaintiffs the terms of its warranty before the purchase of

20 Defendant's vehicle, 16 CFR 703.3.

21     63.    Plaintiffs are entitled to the remedy available under 15 U.S.C.

22 §2310, including all of his actual damages, attorneys' fees and costs of litigation.

**BREACH OF CONTRACT**

64.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set out herein.

65.     Parties manifested a mutual assent in that Plaintiffs agreed to pay for the Defender, and Defendants agreed to deliver the Defender.

66.     Defendants did not deliver the Defender in a condition promised and advertised.

67.     Defendants each contributed to the breach of contract as set forth above, in that the vehicle was not like new, and did not perform as advertised and was not free from defects pursuant to the agreement.

68.     As a result of Defendants' breach of contract as described above Plaintiffs were harmed in an amount not less than $50,000.

69.     The Plaintiffs are entitled to recover actual damages, and attorneys' fees and costs as well as injunctive relief.

70.     Alternatively, the Plaintiffs may seek rescission of the contract.

**RACKETEERING**
**A.R.S. §§ 13-2301, 13-2314.04**

71.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set out herein.

72.     Defendants misrepresented the condition of the Defender to induce Plaintiffs to purchase the Defender.

73.      Defendants failure to provide the Defender free from defect was

1  part of a scheme or artifice to defraud the Plaintiffs.

2      74.    Because Defendants Gisa and Tophat work together and are the two

3  businesses involved with the sales transaction of the Defender with the Plaintiffs.

4  There is factual support that Gisa and Tophat conducted a scheme to defraud the

5  Plaintiffs.

6      75.    As a result of Defendants' racketeering activity Plaintiffs were

7  harmed in an amount not less than $50,000.

8      76.    Because Defendants' scheme to defraud harmed the Plaintiffs, the

9  Plaintiffs are entitled to pursue actual and treble damages, reasonable attorneys'

10  fees and costs.

11                 **AIDING AND ABETTING**

12      77.    Plaintiffs incorporate by reference the foregoing paragraphs as if

13  fully set out herein.

14      78.    Gisa Investments, LLC procured and sold vehicle to the Plaintiffs

15  with sufficient knowledge that Tophat would sell the vehicle to the Plaintiffs.

16      79.    By assisting Tophat to misrepresent and sell a used vehicle that did

17  not function in a safe condition as provided in title 28, chapter 3, article 16 with

18  defects that significantly limits the use of Defender for the ordinary purpose of

19  transportation on any public highway Gisa Investments substantially assisted and

20  encouraged Tophat.

21      80.    By assisting Tophat to sell a used vehicle that did not function in a

22  safe condition as provided in title 28, chapter 3, article 16 with defects that

1  significantly limits the use of Defender for the ordinary purpose of transportation
2  on any public highway, Gisa Investments substantially assisted and encouraged
3  Tophat LLC.

4      81.    Gisa and Tophat's involvement aided and abetted each other to
5  deceive the Plaintiffs during the pre-sale of the Defender.

6      82.    As a result of Defendants' racketeering activity Plaintiffs were
7  harmed in an amount not less than $50,000.

8      83.    Because Defendants aided and abetted each other to deceive the
9  Barrios. The Plaintiffs are entitled to pursue actual and punitive damages,
10  reasonable attorneys' fees and costs.

11                **NEGLIGENT MISREPRESENTATION**

12      84.    Plaintiffs incorporate by reference the foregoing paragraphs as if
13  fully set out herein.

14      85.    Arizona recognizes the law of negligent misrepresentation where
15  information is supplied with a commercial transaction. *Mur-Ray Mgmt. Corp. v.*
16  *Founders Title Co.*, 154 Ariz. 417, 423 (Ct. App. 1991).

17      86.    A claim for negligent misrepresentation arises when the provider,
18  usually a seller, has a pecuniary interest and information is provided in the course
19  of seller's business. *Id.* A seller of merchandise must exercise reasonable care and
20  competence when a seller provides information to a purchaser intending for the
21  purchaser to rely on the information found to be false, causing purchaser to incur
22  damages when the false information was justifiably relied upon. *Id.* The false

information can be a misrepresentation, or an omission of fact. *McAlister v. Citibank (Arizona),* 171 Ariz. 2017, 215 (Ct. App. 1992).

87. Tophat made to the Plaintiffs representations prior to and after the sale of the Defender that could be construed as negligent misrepresentations, the following are examples of such representations:

> **"...the car is ready and perfect. Everything has been tested and good to go."**

> "**Everything works properly and we're currently doing the final test runs**."

88. These documented statements are misrepresentations of the condition of the Defender that the Plaintiffs justifiably relied upon, and in relying on these and other statements, the Plaintiffs incurred economic loss and other harm subjecting Defendants to a claim of negligent misrepresentation.

89. Consequential and out-of-pocket losses are recoverable under a negligent misrepresentation claim. Recoverable loss is all damage the Barrios incurred, including the difference in the value of what was received in the transaction and the purchase price, and pecuniary loss suffered as a result of reliance on the misrepresentation (s). *Standard Chtd. PLC v. Price Waterhouse,* 190 Ariz. 6, 35 (Ct. App. 1996).

**RESCISSION**

90. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set out herein.

91. Tophat's breach of Arizona warranty statutes resulted in an un-

1 merchantable vehicle upon delivery, thereby purchase agreement is voidable at

2 the Barrios' option.

3       92.    In Arizona, where fraud is part of a transaction, a party may cancel

4 the contract and seek return of the purchase price paid, and also recover incidental

5 and consequential damages incurred by seller's breach of the transaction's

6 contract. *Mobile Home Sales Management, Inc. v. Brown,* 115 Ariz. 11, 13-14, 562

7 P.2d 1378, 1380-81 (Ct. App. 1977). Arizona Revised Statutes §§47-2714, 47-2715.

8                          **DEMAND FOR JURY TRIAL**

9       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

10 demand trial by jury of all issues so triable.

11

12                          **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiffs Gabriel Barrio and Kali Barrio pray that this

14 Court enter Judgment in their favor and against Gisa Investments, LLC and

15 Tophat U.S., LLC as follows:

16      A.    An award of actual damages including any compensatory,

17 incidental, or consequential damages commensurate with proof at trial for the

18 acts complained of herein;

19      B.    Appropriate injunctive relief finding that the Plaintiff can rescind

20 the purchase agreement;

21      C.    For pre- and post-judgment interest on any amounts awarded

22 herein at the maximum lawful rate from the date of its rendition until paid in full;

1    D.    For costs, interest and actual reasonable attorneys' fees

2    E.    Any and all equitable relief and such other and further relief as this

3 Court deems just and proper.

RESPECTFULLY SUBMITTED this 21st day of May, 2020.

**A. FERRARIS LAW, P.L.L.C.**

*/s/ Christine Anderson Ferraris*
Christine Anderson Ferraris

**PRICE LAW GROUP, APC**

*/s/ Susan M. Rotkis*
Susan M. Rotkis

*Counsel for Plaintiffs Gabriel Barrio and Kali Barrio*